# Duckett v. Home Building and Loan Association

*Raymond Porreca* and *A. W. Levin,* for plaintiffs.

*Farbman & Cohen* and *Blair N. Riley, Jr.,* for defendants.

WEINROTT, J., April 15, 1957.—This complaint in assumpsit was filed by plaintiff veteran and his wife, seeking the recovery of $500 down payment on the purchase of premises 5504 Race Street, Philadelphia, and the value of certain improvements. The agreed purchase price was $5,000, and a first mortgage in the amount of $4,500 was given by the veteran and his wife to defendant Home Building and Loan Associa-

tion. This mortgage was guaranteed by the United States Government under the provisions of Title III of the Servicemen's Readjustment Act of June 22, 1944, C. 268, sec. 500, 58 Stat. at L. 291, as amended, 38 U. S. C. §694, et seq. Shortly after they moved into the premises, plaintiff installed and paid for storm windows, screens and venetian blinds.

About one year after the purchase of the premises, plaintiffs defaulted in their mortgage. Defendant Home Building and Loan Association entered judgment on the bond accompanying its mortgage and exposed plaintiffs' property to sheriff sale. At the sheriff sale the property was sold to the attorney on the writ for defendant Home Building and Loan Association for a bid of $275. Defendant Home Building and Loan Association then notified the Veterans Administration, pursuant to the rules and regulations promulgated under the authority of the Servicemen's Readjustment Act, as amended, of its election to convey the property and all its rights thereto derived from the sale to the administrator of the Veterans Administration upon payment to it of the amount claimed under the loan guaranty. The Veterans Administration then requested Home to notify the owner to vacate the premises as soon as possible. The owners were cautioned that when the property was vacated it should be left in good order with all refuse and debris removed; that the plumbing and heating systems of the property should be completely drained, and should be secured and locked and protected against vandalism, and that the key should be forwarded to the Veterans Administration Office to the attention of the property management section.

On or about January 20, 1954, plaintiffs removed, leaving on the premises the storm windows, screens and venetian blinds which they had installed.

The Veterans Administration, by means of a real estate agent, procured another purchaser for the premises who paid the sum of $5,750 for the purchase of the property. Plaintiffs instituted suit against defendant Home Building and Loan Association and H. B. Higley, Administrator of Veterans Affairs, seeking the return of the $500 deposit money paid at the time of the purchase of the premises, and the sum of $380 for the cost of improvements in the nature of storm windows, screens and venetian blinds. Both defendants filed preliminary objections. Defendant Home Building and Loan Association filed their objections in the nature of a demurrer, while the preliminary objections of defendant H. B. Higley raised a question of jurisdiction as well as a demurrer. The preliminary objections of both defendants were overruled and they then filed answers.

The matter was tried before this court sitting without a jury, and a finding was entered for defendant Home Building and Loan Association and against plaintiffs. Decision was reserved as to H. B. Higley, Administrator of Veterans Affairs.

The Servicemen's Readjustment Act of World War II, as amended, provides for the guarantee by the Government of certain real estate loans granted in compliance with the act. One of the conditions of the guaranty is that any real estate loan other than for repairs, alterations or improvements shall be secured by a first lien on the realty, and a nonreal estate loan, except as to working or other capital, merchandise, good will or other intangible assets shall be secured by personalty to the extent legal and practicable: Section 694 (b), 38 U. S. C. p. 624-25. The act provides certain procedures on default in the payment of any loan guaranteed under the act.

"§694g. Procedure on default.

"In the event of default in the payment of any loan guaranteed under this subchapter, the holder of the

obligation shall notify the Administrator who shall thereupon pay to such holder the guaranty not in excess of the pro rata portion of the amount originally guaranteed, and shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty: *Provided,* That prior to suit or foreclosure the holder of the obligation shall notify the Administrator of the default, and within thirty days thereafter the Administrator may, at his option, pay the holder of the obligation the unpaid balance of the obligation plus accrued interest and receive an assignment of the loan and security: *Provided further,* That (1) nothing in this section shall be construed to preclude any forbearance for the benefit of the veteran as may be agreed upon by the parties to the loan and approved by the Administrator; and (2) the Administrator may establish the date, not later than the date of judgment and decree of foreclosure or sale, upon which accrual of interest or charges shall cease." June 22, 1944, c. 268, Title III, §506, as added Dec. 28, 1945, c. 588, §8, 59 Stat. 630.

Section 694(*j*) provides certain powers of the administrator:

"(a) With respect to matters arising by reason of this subchapter as now or hereafter amended and, notwithstanding the provisions of any other law, the Administrator may—

"(1) Sue and be sued in his official capacity in any court of competent jurisdiction, State or Federal; . . .

"(5) Purchase at any sale, public or private, upon such terms and for such prices as he determines to be reasonable, and take title to, property, real, personal or mixed; and similarly sell, at public or private sale, exchange, assign, convey, or otherwise dispose of any such property; and. . . ."

Plaintiffs argue that the Servicemen's Readjustment Act of 1944, as amended, by the use of the words,

"shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty", creates the Administrator of Veterans Affairs as one merely holding title to security for the benefit of the veteran, and that upon default and foreclosure sale the veteran is the recipient of any net profit derived from the sale. The contention of defendants is that the rights of plaintiffs are extinguished by the sheriff sale, and that the contract of guaranty being a gratuity on the part of the Government inures in no way to the additional benefit of plaintiffs. The administrator, in this case, elected to pay the holder of the obligation the amount of the existing debt of the veteran up to the extent of the guaranty, and thereby received an assignment of the loan and the security. Upon receipt of the loan and security, we believe that the administrator then stood in the shoes of any bona fide assignee of the mortgagee. We cannot find any intention within the act to place the Veterans Administrator in any different position from that of any other assignee of the mortgagee or other purchaser at sheriff sale.

We agree with defendants that the construction argued by plaintiffs would make the administrator a trustee for the defaulting veteran mortgagor and subject the Administrator of Veterans Affairs to the duties of a trustee. It is clear that the act contemplated foreclosure on the mortgage and the extinguishment of the rights of the veteran purchaser. If the position of plaintiffs was sound, then upon subsequent transfers thereafter subject to the mortgage, the Veterans Administrator, on foreclosure against any of the subsequent purchasers, would still have to account over to the veteran.

The court is unwilling to change the entire meaning and intention of the act by limiting it as maintained by plaintiffs on the basis of one clause. The entire

act must be considered as a whole, and construing the act as a whole, we are of the opinion that the legislative intent of the words "up to the extent of the guaranty", was merely to make more clear and certain the prohibition against the administrator's paying to the holder of the obligation an amount in excess of the guaranty.

The question of plaintiffs' claim for the value of the improvements hinges upon the nature of the property installed in the light of plaintiffs' intention at the time of installation and on plaintiffs' removal from the premises.

Even though the chattels are physically removable without destroying or materially injuring the chattels themselves or the property to which they are annexed, they may become part of the realty to which they are attached if that be the intention of the parties at the time of the annexation: Clayton v. Lienhard, 312 Pa. 433. There can be no serious doubt as to the intention of plaintiffs at the time of the installation of the storm windows and screens to make them permanent fixtures, even though they now contend that these items can be used for other properties in the same area.

Where storm windows and screens are specially manufactured for and fitted to the property by the owner, they are deemed to be fixtures and as such pass with the realty: Batcheler v. Lally, 66 D. & C. 25.

The venetian blinds purchased by plaintiffs may be said to fall into that class of chattels which, in the case of Clayton v. Lienhard, supra, are described as "those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used". These chattels are held to always remain personalty. However, where the owners of chattels voluntarily relinquish control thereof and leave them on the premises after due notice to vacate, knowing that the property had been sold

to another, they must be considered to have abandoned these chattels: See 1 Am. Jur. 2, §3 on Abandonment.

Moreover, if plaintiffs had any claim, it would have been against the persons in control of the property and not defendants in this case whose sole interest was in protecting their loan and loan guaranty.

We do not believe that plaintiffs are entitled to recover any damages in this action and, therefore, enter the following

### Order

And now, to wit, April 15, 1957, the court, after full hearing and due consideration of this matter, finds in favor of defendant, H. V. Higley, Administrator of Veterans Affairs, and against plaintiffs, a finding having heretofore been entered in favor of Home Building and Loan Association under date of December 15, 1955.